DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Kenneth Johnson, appeals his conviction and sentence by the Summit County Court of Common Pleas for failure to comply with an order of a police officer, receiving stolen property, and hit skip. We affirm the decision of the trial court.
 {¶ 2} A seven count indictment was filed against Defendant on October 18, 2004. Defendant pled not-guilty, and the matter proceeded to a trial by jury. On May 13, 2005, the jury found Defendant guilty of failure to comply in violation of R.C.2921.331(B), a third degree felony, two counts of receiving stolen property, in violation of R.C. 2913.51(A), one fourth and one fifth degree felony, hit skip, in violation of R.C. 4549.02, a first degree misdemeanor, reckless operation, and speeding, both minor misdemeanors.
 {¶ 3} Defendant was sentenced on June 15, 2005, to four years in prison for failure to comply, one year in prison for the fourth degree felony of receiving stolen property, one year for the fifth degree felony of receiving stolen property, and six months in jail for hit skip. The terms for the two counts of receiving stolen property and for hit skip were ordered to be served concurrently to each other, but consecutively to the term imposed for failure to comply, for a total prison term of five years.
 {¶ 4} Defendant assigns three errors:
 ASSIGNMENT OF ERROR I
"The convictions of [Defendant] for the charges of failure to comply with signal or order of police officer, hit skip and receiving stolen property in this case are against the manifest weight of the evidence and should be reversed."
 ASSIGNMENT OF ERROR II
"The trial court incorrectly denied [Defendant's] motion for acquittal in violation of [Crim.R.] 29; specifically, there was not sufficient evidence to prove the offenses of failure to comply with signal or order of police officer, hit skip, and receiving stolen property beyond a reasonable doubt."
 ASSIGNMENT OF ERROR III
"The trial court erred to the prejudice of [Defendant] and in violation of [Crim.R.] 29(A), Article 1, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the Constitution of the United States, when it denied [Defendant's] motion for acquittal."
 {¶ 5} The errors are inextricably bound and we consider them together. Defendant's argument that his convictions were based upon insufficient evidence and against the manifest weight of the evidence is the fulcrum of all assigned errors. We find that error is not well taken. Our reasons follow.
 {¶ 6} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing Statev. Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 7} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 8} Defendant argues that his convictions for failure to comply, hit skip and receiving stolen property are against the manifest weight of the evidence; he argues that there was no evidence presented that he was the driver of the vehicle in question, and he had "no knowledge whatsoever of what the driver was doing and [he only] awoke at the sound of the accident." We disagree.
 {¶ 9} Sergeant Michael Sanchez testified that he was working the speed enforcement program on October 8, 2004, when he saw a silver Buick LaSabre speeding at what he clocked to be 92 miles per hour in a 65 mile per hour zone. Sergeant Sanchez turned on his overhead lights to signal the vehicle to stop. The vehicle did stop, and Sergeant Sanchez approached the vehicle. He got to the edge of the back door of the car and looked inside of the car, noting only one occupant in the vehicle, the driver. The sergeant testified that the sole occupant of the vehicle appeared to be a heavy set black male, wearing a light colored blue shirt. The driver then took off from the traffic stop at a high rate of speed. Sergeant Sanchez radioed in that the vehicle was fleeing the traffic stop and he pursued. Driving in excess of 50 miles per hour in a 35 mile per hour zone, the vehicle ran two red lights, drove over a curb, and swerved around a number of cars at an intersection.
 {¶ 10} As Sergeant Sanchez was trying to catch up with the vehicle, he saw people pointing to an office building and signaling to him that the driver was inside of that building. Sergeant Sanchez observed the suspect's damaged vehicle near the front door of the building. He entered the building and came to a "locked door with three or four females standing behind it yelling: he went downstairs." He proceeded to the basement of the building, where he found a black male in a light blue shirt, who, to Sergeant Sanchez, appeared to be excited, nervous and sweating. The suspect was detained, and his identity was later determined to be Kenneth Johnson, the Defendant in this case.
 {¶ 11} Defendant stated that he did not have any identification on him. His wallet and identification, however, were found minutes later on the driver's side floor of the Buick, which was discovered to belong to a car dealership, Toth Buick.
 {¶ 12} Defendant then "admitted that he was in the car, but [claimed] that he was not driving, he was getting a ride down to his employer in Massillon." According to Sergeant Sanchez, Defendant stated that he was "sitting in the passenger's seat, [however] when [Sergeant Sanchez] advised him that [he] could see the passenger seat, and [Defendant] was not sitting there, [Defendant] said he must have been laying in the back seat then." Sergeant Sanchez stated that he had looked in the window of the car when he made the original traffic stop, and no one was in the back seat.
 {¶ 13} Andrea Bantz testified that she worked for Bunch and Associates and was outside on her break with a coworker when she heard a crash. She walked over to see what was going on and saw a "car coming over a grass median, jump the curb and c[o]me up through the grass between two of the parked cars in the parking lot and hit one car[.]" She stated that she was able to see how many people there were in the car, and there was only one person in the car at that time.
 {¶ 14} Ms. Bantz testified that the car came to a stop and a large black man in a blue top got out of the car and ran towards them shouting that someone was shooting at him. Ms. Bantz and her co-workers then ran into their office, closed and locked the door. Ms. Bantz stated that the driver ran into the building behind them and tried the doorknob of their office, but it was locked.
 {¶ 15} Stella Hastings, also a Bunch and Associates employee, testified that she was outside on October 8, 2004 when she saw a heavy-set black man with a blue shirt get out of a silver car and yell that someone was shooting at him. He started to run towards Ms. Hastings and the other employees who were outside, and they ran into the building and into their office. Ms. Hastings identified Defendant as the man she had seen on October 8th.
 {¶ 16} Nancy May, another Bunch and Associates employee, stated that she was outside with a coworker on a break when "we heard a car collision, and a gentleman got out of his car and ran towards us saying someone's shooting at him, and we got back into our offices and closed the door." She stated that the man got out of the driver's side of the car. The ladies, Ms. Hastings, Ms. Bantz, and Ms. May, ran into their office and closed the door and held the handle. The suspect had tried the doorknob to the office and was trying to get in. When he could not enter the office, Ms. May stated that he went down the stairway. Ms. May identified Defendant as the suspect.
 {¶ 17} Richard Geissinger, who also had offices in the building in question, was walking back inside to his office after being outside for a cigarette break when a man suddenly appeared behind him. The man "mentioned to [Mr. Geissinger] that he had been shot and that he needed a ride." According to all of the witnesses, there were no visible injuries on the suspect and no gunshots were heard.
 {¶ 18} Ms. Geissinger let the suspect use the phone and bathroom in one of his offices. When Mr. Geissinger heard the police sirens, he tried to get the suspect back into the corridor of the building and out of his offices. Mr. Geissinger identified Defendant as the suspect.
 {¶ 19} Mr. Toth, an automobile dealer, stated that they were missing a 2000 Buick LaSabre from his dealership. He had received a call from the sheriff's department on October 8, telling him that they were pursuing the vehicle down I7-7. Mr. Toth saw the car outside of the office building and inspected it. He stated that the vehicle was indeed from his dealership, and it was a total loss, meaning that it had sustained over eight thousand dollars in damages.
 {¶ 20} Michelle Davidson testified that she was driving away from her bank on October 8, 2004, when she was hit by a silver car that had run a red light. She next saw the vehicle in a parking lot across the street, which was the parking lot of the office building in which Defendant was found.
 {¶ 21} Defendant testified on his own behalf. He stated that he was at work on October 8, 2004, when he began to feel pain in his ankle. He took two pain pills and became drowsy, and told his boss that he could not stay at work. According to Defendant, he asked the boyfriend of a coworker, Mr. Howard, to drive him to the orthopedic clinic. Defendant stated that he went into the back seat of the car and layed down. He fell asleep and the next thing he knew he heard a "big old boom." He rose from the back seat and saw Mr. Howard "rolling on the ground here, and [he] proceeded out the passenger back door, driver's back door, just got out of the car." He stated that "at the time of the boom, all [he] could remember is, damn, somebody must be shooting, kind of panicked because [he] was in a dead sleep." He then jumped out of the car and "s[aw] these ladies over here, they were running this here way, and he (Mr. Howard) is rolling this way, and * * [he] kind of ran towards the ladies that was going inside the building * * * [he] ran like to shelter * * * was running for shelter."
 {¶ 22} While Defendant's version of the events of October 8, 2004, differs dramatically from the testimony of the State's ten witnesses, we do not find his conviction to be against the manifest weight of the evidence because the jury chose to believe the State's evidence. When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony. See State v. Warren (1995), 106 Ohio App.3d 753,760. "This Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v. Hall (Sept. 20, 2000), 9th Dist. No. 19940, at 9, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4.
 {¶ 23} The court and jury neither lost their way nor created a manifest miscarriage of justice in their verdicts and sentencing. Because the verdicts are not against the manifest weight of the evidence the denial of the acquittal motion was proper. Assignments of Error I and II are OVERRULED. There is no support for Assignment of Error III, and it is OVERRULED.
 {¶ 24} The judgment of the Summit County Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Boyle, P.J., Reader, J. concur.
(Milligan, J., retired, of the Fifth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
(Reader, J., retired, of the Fifth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)