JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Donald Osborne was convicted after a bench trial of leaving the scene of an accident and aggravated vehicular homicide.
 {¶ 2} He presents nine assignments of error in which he challenges both his convictions and the sentence the trial court imposed. Appellant asserts that his convictions are not supported by either sufficient evidence or the weight of the evidence, that his conviction for leaving the scene of an accident, as indicted, was not a felony of the third degree, that enhancing his penalty for his conviction for aggravated vehicular homicide was unconstitutional as applied to him, that the trial court misinformed him of post-release control requirements, that his five-year *Page 2 
sentence was excessive, and that the sentence violates the Ex Post Facto Clause contained in the United States Constitution.
 {¶ 3} This court cannot agree with any of appellant's assertions. Consequently, his convictions and sentence are affirmed.
 {¶ 4} Appellant's convictions result from an incident that occurred just after midnight on May 11, 2005. According to the testimony of his acquaintance, George Korman, he and appellant went to a bar located near the intersection of Denison Avenue and West 95th Street in Cleveland. Appellant participated in a "pool league" which was hosted there that night. They arrived there sometime around 8:00 p.m. When the games concluded approximately four hours and a few rounds of drinks later, the two men left together, intending to proceed to another bar.
 {¶ 5} Despite the fact that his driver's license had been suspended for nonpayment of child support, appellant was driving. He had parked his Dodge Dakota "extended cab" pickup truck at the curb on West 95th Street. As he pulled away and proceeded south, Korman thought appellant "took off a little bit fast."
 {¶ 6} Actually, the truck's acceleration was so intense that it alerted a few of the street's residents. Raymond Beagle, who was inside his home, testified he heard it; it sounded as though it were "[s]peeding full throttle." He went to his door to observe it. *Page 3 
 {¶ 7} Similarly, appellant's truck's acceleration attracted the attention of Casimir Pleva as he sat on his front porch. Pleva watched as the truck "was coming down the street." He saw it "swerve," and heard "a loud crash." Beagle, too, heard a "big bang;" the sound was "intense."
 {¶ 8} Korman, who was in the passenger seat of the truck, noticed as the truck abruptly swerved to the right. He saw it "hit [a] girl" with its left front. Appellant slowed for perhaps a moment, but "took off." Appellant continued southbound on the street, then turned west at the intersection with Almira Avenue. Although a stop sign was located there, appellant made the turn so quickly that Pleva "thought [his truck] was going to turn over."
 {¶ 9} Korman was aghast at what had occurred. He demanded that appellant stop the truck and let him out. Appellant acquiesced. Korman returned to the bar, where he waited for a ride and decided what to do.
 {¶ 10} Beagle and Pleva thought the crash came from the truck's collision with one of the few cars parked on the west side of the street. The noise brought neighbors outdoors. At that point, someone discovered a body lying on the tree lawn and summoned the police and the emergency squad. As Beagle approached the location, he noticed "debris" scattered all over the street. The body was "folded over;" Beagle likened the position to that of a "newspaper." *Page 4 
 {¶ 11} The body belonged to the victim, Cynthia Layman. Although the emergency squad made efforts to revive her, upon her arrival at the hospital, she was pronounced dead. The subsequent autopsy proved she died at the scene; she had suffered, inter alia, a complete fracture of her thoracic spine, which accounted for her unnatural position, and a nearly circumferential trans-section of her aorta. Her body bore contusions and abrasions from head to knees.
 {¶ 12} Police investigation of the incident indicated the force of the collision lifted Layman out of her athletic shoes and threw her perhaps forty feet. The contents of her purse littered the street for nearly two-hundred feet. Pieces of appellant's truck's headlight assembly also remained in the street.
 {¶ 13} Korman eventually went to the police to provide a written statement about the incident. The headlight debris from the street was matched to appellant's truck, and he was arrested.
 {¶ 14} Appellant originally was charged with five counts. In relevant part, count one charged him with violation of R.C. 4549.02(A), Failure to stop after an accident, i.e., "while driving * * *and after being involved in an accident or collision * * *, [he] fail[ed] to immediately stop * * * and remain at the scene * * * until he had given his name and address * * * to any police officer * * *." The count contained a furthermore clause that stated "the accident * * * resulted in death" to Layman. *Page 5 
 {¶ 15} Count three charged appellant with violation of R.C.2903.06(A)(2)(a), Aggravated vehicular homicide, i.e., he "while operating * * * a motor vehicle, cause[d] the death of Cynthia Layman, recklessly," with a specification that during the commission of the offense, he was driving while his license was under suspension.
 {¶ 16} Appellant executed a jury waiver and the case was tried to the bench. After hearing the testimony and reviewing the evidence, the trial court found appellant guilty of the foregoing charges. The court sentenced appellant to consecutive prison terms of two and three years, respectively.
 {¶ 17} In his appeal of his convictions and sentence, appellant presents nine assignments of error. His first, second and third challenge his conviction on count one.
 {¶ 18} In them, appellant claims that the trial court finding of his guilt of a third-degree felony is not supported by either sufficient evidence or the weight of the evidence, because the indictment charged him with only a misdemeanor offense. He asserts the language of R.C.4549.02 required the state to prove that his "failure to stop and report," itself, "resulted" in Layman's death in order to establish his guilt of a third-degree felony.
 {¶ 19} In actuality, what appellant argues is to separate statutorily-tied concepts, i.e., the accident from his failure to stop and report it; he seeks to substitute the word "causes" for the statutory word "results." *Page 6 
 {¶ 20} This court, however, does not read either the statute or the indictment in this manner. North Olmsted v. Gallagher (1981),2 Ohio App.3d 414, headnote two. As charged, the indictment contains a furthermore clause that states "the accident," not appellant's mere "failure to stop and report" it, resulted in the victim's death. Id.
 {¶ 21} Pursuant to R.C. 4549.02(B), "[w]hoever violates division (A)* * * is guilty," but "if the violation results in the death of a person," the violation becomes a third-degree felony offense. The statute does not define the word "results."
 {¶ 22} In Webster's New Collegiate Dictionary, when used as a verb, the word is defined as something that "arise[s] as a consequence." In turn, the word "consequence" may be either direct or indirect. On the other hand, the verb "cause" indicates an antecedent which "brings about" that which follows.
 {¶ 23} Thus, the statute seeks to hold the offender responsible for his ensuing actions. Presumably, the legislature understood the difference in meaning between "causes" and "results" and chose the statutory word "results," mindful that, often, the other person involved in the accident is the first, if not the only person, on the scene who is available to render aid to the victim.
 {¶ 24} In considering a claim of insufficient evidence, this court is required to view the evidence adduced at trial, both direct and circumstantial, in a light most favorable to the prosecution to determine if a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. State v. *Page 7 Dennis, 79 Ohio St.3d 421, 1997-Ohio-372; State v. Jenks (1991),61 Ohio St.3d 259.
 {¶ 25} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the trier-of-fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 26} Appellant concedes he failed to stop and report the collision. Thus, he concedes the sufficiency of the evidence of the underlying offense. The weight of the evidence also supports the underlying offense, since three witnesses testified that appellant's truck collided with something but simply kept going. State v. Johnson, Summit App. No. 22789, 2006-Ohio-2277.
 {¶ 27} The evidence, moreover, demonstrated that the "accident" occurred when appellant's truck struck an object. The object with which his truck collided was not another vehicle, but the victim. She had been alive and walking, but the force of that collision broke Layman's spine and aorta. According to the coroner's testimony, there was "no question" Layman died at the scene. This evidence was sufficient to prove the charge contained in the furthermore clause, viz., that the accident "resulted" in her death. *Page 8 
 {¶ 28} Since the evidence provided to the trial court supports its conclusion that appellant was guilty of violating R.C. 4549.02 as a felony of the third degree, his first, second and third assignments of error are overruled.
 {¶ 29} Appellant challenges his conviction for aggravated vehicular homicide in his fourth, fifth and sixth assignments of error. Again, he claims that the trial court's finding of guilt was based on neither sufficient evidence, nor supported by the weight of the evidence. Specifically, he asserts the evidence failed to prove he acted "recklessly," as required by R.C. 2903.06(A).
 {¶ 30} R.C. 2901.22(C) defines the word "reckless." It requires proof of the defendant's "heedless indifference to consequences," in that he "perversely disregards a known risk that his conduct is likely to cause a certain result."
 {¶ 31} The evidence established that after spending approximately four hours playing pool in a bar, appellant, who did not have a valid driver's license at the time, got into his truck and pulled away from the parking spot at a rate that seemed to his passenger at least "a little bit fast," because the tires squealed. The time was after midnight, but the bar was still open, so people were still active in the area.
 {¶ 32} Although Denison Avenue, where the bar was located, was a main thoroughfare, appellant's truck had been parked on a residential side street. Only twenty-six feet and six inches in width, West 95th had a posted speed limit of twenty-five miles an hour. The street was poorly lit, since trees obscured the lights. *Page 9 
Moreover, vehicles parked at the curb along the street's length limited a driver's visibility.
 {¶ 33} According to the witnesses, appellant accelerated southbound on West 95th Street so strongly that the truck's throttle sounded fully "open." He was "speeding down the street" when the collision occurred. He struck Layman with such force that her spine was broken in two and she was thrown a distance of approximately forty feet.
 {¶ 34} From the foregoing, the trial court was justified in determining appellant's actions were "reckless" under the circumstances that existed that night, and, therefore, his guilt was supported by both sufficient evidence and the weight of the evidence. State v.Fitzwater (Dec. 10, 1999), Hamilton App. Nos. C-981005, 981006.
 {¶ 35} Appellant further argues that the enhanced penalty for his conviction for aggravated vehicular homicide based upon the fact that he was driving under suspension at the time of the incident is unconstitutional as applied to him. He contends the enhancement was meant to punish poor drivers, not people who only failed to pay child support. This court disagrees.
 {¶ 36} As the court explained in State v. Whitaker (1996),111 Ohio App.3d 608, R.C. 2903.06 specifically states that the offense may be enhanced "if the offender committed the offense while driving under suspension." As used in the *Page 10 
statute, the words "driving under suspension," therefore, "carry distinct consequences."
 {¶ 37} Appellant committed a vehicular offense in spite of the fact that he lacked a valid driver's license. Since the legislature specifically referred to a "suspension" as permitting an enhanced penalty, this court lacks authority "to ignore the plain meaning of R.C. 2903.06 * * * under the pretense of statutory interpretation." Id. at 615.
 {¶ 38} Therefore, his fourth, fifth and sixth assignments of error also are overruled.
 {¶ 39} Appellant challenges his sentence in his seventh, eight and ninth assignments of error. First, he asserts his sentence must be vacated because the trial court informed him that he would be subject to post-release control for "up to three years," rather than informing him that the period was for the entire three years. This assertion is rejected based upon Watkins v. Collins, 111 Ohio St.3d 425,2006-Ohio-5082 and State v. Imburgia, Cuyahoga App. No. 87917,2007-Ohio-390.
 {¶ 40} Next, appellant claims his sentence of a total of five years was disproportionate from similar sentences imposed upon similar offenders. Finally, he claims that the application of State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856 to this case violates the constitutional prohibition against ex post facto laws, thus, the *Page 11 
trial court should have sentenced him only to the minimum term of incarceration for the most serious offense.
 {¶ 41} These claims also are rejected. Appellant never raised them in the trial court; therefore, his arguments were waived for purposes of appeal. State v. Edwards, Adams App. No. 06CA830, 2007-Ohio-1516, ¶ 5. Moreover, appellant's sentence is not disproportionate. Id. At any event, this court previously has rejected the ex post facto claim he raises herein. Id. at ¶ 6, citing State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715.
 {¶ 42} For the foregoing reasons, appellant's seventh, eighth and ninth assignments of error also are overruled.
 {¶ 43} Appellant's convictions and sentence are affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 12 
 ANTHONY O. CALABRESE, JR., P.J. and MARY J. BOYLE, J. CONCUR *Page 1