The STATE of Ohio, Appellee,

v.

BIRO, Appellant.

[Cite as *State v. Biro*, 191 Ohio App.3d 201, 2010-Ohio-5763.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93737.

Decided Nov. 24, 2010.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Richard J. Bombik and Lisa M. Stickan, Assistant Prosecuting Attorneys, for appellee.

John P. Hildebrand Co., L.P.A., and John P. Hildebrand Sr., for appellant.

MARY J. BOYLE, Judge.

{¶ 1} Defendant-appellant, Timothy Biro, appeals his conviction of leaving the scene of an accident, in violation of R.C. 4549.02(A), which carried a "furthermore" clause elevating the offense to a third-degree felony as a result of the victim dying. He raises the following six assignment of errors:

{¶ 2} "[I] The trial court erred when it refused to allow the defense to qualify officer Gilbert as an accident [expert] and ask him about his conclusion that the front of Mr. Biro's vehicle struck the bicycle while it was on the ground and did not strike a person.

{¶ 3} "[II] Mr. Biro is only guilty of a misdemeanor violation of R.C. 4549.02 because the indictment does not allege a felony violation.

{¶ 4} "[III] The jury verdict form only supports a misdemeanor conviction.

{¶ 5} "[IV] The jury was incorrectly instructed regarding the elements of the furthermore clause in Count Two.

{¶ 6} "[V] The combination of errors discussed in assignments II through IV constitute a structural error that requires reversal.

{¶ 7} "[VI] The evidence is insufficient to sustain a felony conviction of R.C. 4549.02."

{¶ 8} After a thorough review of the facts and applicable law, we affirm.

Procedural History and Facts

{¶ 9} The grand jury indicted Biro on two charges: (1) aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), and (2) failure to stop after an accident, in violation of R.C. 4549.02(A). The second count also carried a furthermore clause, stating that the accident in question resulted in the death of the victim. The charges arose out of Biro's vehicle allegedly colliding with the victim, who was on a bicycle and who died as a result of the collision. Biro pleaded not guilty to the charges, and the matter proceeded to a jury trial.

{¶ 10} The state presented the testimony of two eyewitnesses, Loshanda Mollica and Jujuan Mays. Mollica testified that the victim was riding his bicycle across East 55th Street toward Woodland when Biro's vehicle collided with him, causing the victim to bounce off Biro's car, hit the ground, and go partially underneath Biro's vehicle, where she believed that he was run over by the rear of the car. Mays testified that she saw that the victim and Biro were about to collide, so she looked away, but that she heard the collision. Mays saw Biro's vehicle clear the intersection in front of her, slow down for a few seconds, and then proceed to accelerate and continue on East 55th Street. Mays, along with her husband, who was driving, followed Biro's vehicle and called 9–1–1, providing

the police with Biro's license plate number. She further testified that her husband flashed the lights of their vehicle in an attempt to stop Biro.

{¶ 11} The state also produced forensic evidence that supported the eyewitnesses' testimony that Biro's vehicle had contact with the victim's bike and the victim. Specifically, the state established that the paint smear found on Biro's vehicle was consistent with the paint damage on the bike, that the black transfer material found on the surface of the vehicle was consistent with the composition of the bike's brake lever, and that there was a consistency of patterns between the sidewall and pedal of the bike and the undercarriage of Biro's vehicle. The state further introduced evidence that the victim's sweatshirt bore a tire pattern that had class characteristics consistent with the tire of Biro's vehicle. The coroner's testimony also revealed that the victim died from blunt trauma that caused extensive internal bleeding and that the victim's injuries were consistent with having been run over by a car.

{¶ 12} The state also called Richfield Police Officer Robert Gilbert, who testified that he heard the radio call regarding a possible hit-and-run by a vehicle registered to Biro. Gilbert then stopped Biro, who was driving to his home in Hudson. Biro was escorted to the Richfield Police Department, where a breath-alcohol test was administered, revealing a blood-alcohol content of .014 milligrams per liter, under the legal limit of .08.

{¶ 13} On cross-examination, Gilbert testified that Biro appeared to be going the speed limit, that he seemed surprised to be pulled over, and that once he was informed of the basis of the stop, i.e., suspected involvement in an accident, he was "noticeably upset." Gilbert further testified that he anticipated that Biro's vehicle would have had a headlight out based on the alleged accident because "when a motor vehicle strikes a person or objects with today's plastic lights they break pretty easily and it would damage one of them." Gilbert testified, however, that the only noticeable damage that he observed was (1) an indentation on the left-hand side in the bumper cover and (2) a broken driving light in the lower left-hand corner of the motor vehicle.

{¶ 14} After the state's presentation of its case-in-chief, the trial court granted Biro's Crim.R. 29 motion as to the aggravated-vehicular-homicide count but denied Biro's motion as to the second count.

{¶ 15} The trial proceeded on the charge of failure to stop after an accident.

{¶ 16} The defense presented a character witness who testified that Biro is one of the "most honest, open, truthful, caring persons."

{¶ 17} Biro also testified in his own behalf. According to him, he recalled that at the intersection of East 55th and Woodland, he "hit a bump that felt similar to what you would expect if you hit a pothole." Immediately following, he slowed

down, looked in his left side mirror, and observed car lights behind him "but nothing else." He never saw a bicycle or person lying on the ground. He then proceeded to drive home but was ultimately pulled over in Richfield. He testified that he had no idea that his vehicle was involved in an accident.

{¶ 18} The jury returned a guilty verdict on the second count and further found that the victim died as a result of the accident, thereby elevating the offense to a third-degree felony. The trial court sentenced Biro to one year of community-control sanctions.

{¶ 19} Biro now appeals his conviction. For the ease of discussion, we will address Biro's assignments of error out of order.

### Misdemeanor versus Felony Conviction under R.C. 4549.02

{¶ 20} Biro's second, third, fourth, fifth, and sixth assignments of error all relate to former R.C. 4549.02 [1] and the penalty provision contained in the statute.

{¶ 21} The statute provides:

{¶ 22} "(A) In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person driving or operating the motor vehicle, having knowledge of the accident or collision, immediately shall stop the driver's or operator's motor vehicle at the scene of the accident or collision and shall remain at the scene of the accident or collision until the driver or operator has given the driver's or operator's name and address and, if the driver or operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle, to any person injured in the accident or collision or to the operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision, or to any police officer at the scene of the accident or collision."

{¶ 23} Pursuant to former R.C. 4549.02(B), "[w]hoever violates division (A) is guilty of failure to stop after an accident, a misdemeanor of the first degree," but "if the violation results in the death of a person," the violation becomes a third-degree felony offense. The statute, however, does not define the word "results."

{¶ 24} In his second assignment of error, Biro argues that the indictment lacked the proper language to constitute a felony offense as defined in former R.C. 4549.02(B). It stated as follows: "Furthermore, the accident in question resulted in the death of Terrell Jones." Biro argues that the use of the word "accident" was erroneous because the statute requires a showing that the "violation" resulted in death. He further argues in his third and fourth assign-

---

1. The statute was amended effective September 17, 2010.

ments of error that this same deficiency was carried through in the jury-verdict form and jury instruction, thereby resulting in the jury convicting him of only a misdemeanor. He also argues that the cumulative effect of these errors constitute structural error that requires a reversal. And finally, he argues in his sixth assignment of error that the state failed to present sufficient evidence to sustain a felony conviction as defined under former R.C. 4549.02(B). We, however, find Biro's arguments unpersuasive.

{¶ 25} The underlying rationale in support of Biro's five assignments of error is that a violation of former R.C. 4549.02(A), failure to stop after an accident, is only a misdemeanor offense under former R.C. 4549.02(B) unless the defendant's act of leaving the scene results in death, as opposed to the accident itself resulting in death. But aside from the fact that Biro failed to raise any argument below related to these issues, this court has previously addressed this exact argument and rejected it. See *State v. Osborne*, 8th Dist. No. 88453, 2007-Ohio-3267, 2007 WL 1848946.

{¶ 26} Contrary to Biro's assertion, *Osborne* is right on point and controlling. In *Osborne*, we recognized that "the statute seeks to hold the offender responsible for his ensuing actions." Id. at ¶ 23. We expressly rejected the defendant's claim that the language of former R.C. 4549.02(B) required the state to prove that the defendant's failure to stop and report resulted in the victim's death in order to establish his guilt of a third-degree felony. Id. at ¶ 18–23. Instead, in order to sustain a third-degree felony, the state must prove that the accident resulted in the victim's death. Id.[2] Indeed, "[t]he statute does not require that the failure to stop directly causes the victim's death." *State v. McGraw*, 4th Dist. No. 08CA3009, 2008-Ohio-6134, 2008 WL 5046811, ¶ 13.

{¶ 27} Accordingly, consistent with our holding in *Osborne*, Biro's second, third, fourth, fifth, and sixth assignments of error are overruled.

### Expert Testimony

{¶ 28} In his first assignment of error, Biro argues that the trial court abused its discretion in refusing his efforts on cross-examination to qualify the state's witness, Officer Robert Gilbert, as an expert in accident reconstruction and elicit Gilbert's opinion as to the accident. We disagree.

{¶ 29} At trial, the state had identified and called Officer Gilbert as a fact witness in its case-in-chief. During cross-examination, Biro's counsel attempted to establish that Gilbert was an expert in accident reconstruction. Defense counsel intended to question Gilbert about his expert conclusions regarding the

---

**2.** Notably, the indictment in *Osborne* was identical to the one at issue here, using the word "accident" instead of "violation."

position of the victim's bicycle when it was hit by Biro's vehicle. The trial court prohibited this line of questioning for two reasons: (1) defense counsel never provided an expert report to the state and (2) Gilbert "never had a second look at the car after he stopped the car and walked around it." Biro's defense counsel proffered Gilbert's excluded testimony:

{¶ 30} "He would have testified that, had he been allowed to testify, he would have testified that the dent in the right front portion of Mr. Biro's car was consistent with striking the pedal of the bike.

{¶ 31} "He also would have testified that the evidence was not consistent with the bicycle—with Mr. Biro's car striking a person. And also that the bike was already on the ground when Mr. Biro's car struck it."

{¶ 32} "And I think that as I related to the court, we didn't have a report, and it's my understanding if there is a report it must be conveyable. If there is no report then obviously you don't have to produce that report."

{¶ 33} After hearing the proffer, the trial court maintained its exclusion of any expert testimony.

{¶ 34} Biro argues that the trial court's refusal to allow Gilbert's opinion testimony deprived him of his due-process rights under the United States Constitution because he was prevented from presenting testimony that was critical to his defense. He specifically argues that Gilbert's expert testimony would have undermined the state's eyewitness testimony establishing that the victim was still on the bike when the collision occurred, and, significantly, it would have supported Biro's own testimony that he did not see the victim on a bike. The state counters that Biro's defense counsel failed to comply with Crim.R. 16 and therefore the exclusion of the testimony was proper.

{¶ 35} The trial court has broad discretion in regulating discovery. *State v. Scudder* (1994), 71 Ohio St.3d 263, 269, 643 N.E.2d 524. "The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. The overall purpose is to produce a fair trial." *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 3, 511 N.E.2d 1138. When a discovery violation occurs, the trial court should impose the least severe sanction that is consistent with the purposes of the discovery rules. Id. We will not disturb the trial court's choice of remedy absent an abuse of discretion. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 26, 514 N.E.2d 394.

{¶ 36} The Ohio Supreme Court has repeatedly recognized that "the trial court has authority to enter pretrial orders regarding discovery." Further, "[d]iscovery beyond what the rules require is at the trial court's discretion." *State v. Landrum* (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d 710.

{¶ 37} Biro argues that the trial court erroneously excluded Gilbert's testimony on the basis that he failed to provide an expert report because former Crim.R. 16 or Loc.R. 21.1(B) of the Court of Common Pleas of County County imposes no such duty in criminal cases.[3]  While we agree that former Crim.R. 16 imposes no duty to provide a written expert report and that this court has previously held that Loc.R. 21.1(B) does not apply in criminal cases,[4] Biro ignores a critical fact in the proceedings below: the trial court specifically set a deadline for the defense's expert report to be provided.

{¶ 38} On April 15, 2009, Biro's defense counsel moved for a continuance of the trial date set for April 22, 2009, because he needed additional time to secure a different expert.  The trial court granted the continuance, converting the trial date into a pretrial.  Following the pretrial, the trial court reset the trial for June 3, 2009, and issued a discovery order, stating: "Defense expert report due 5/20/09."  Defense counsel never objected to this order nor raised any argument on appeal related to the trial court's express requirement.

{¶ 39} The state contends that Biro's defense counsel never responded to the state's request for discovery.  We find no discovery responses filed by Biro in the record.  Thus, aside from failing to comply with the court's express order regarding the submission of an expert report prior to trial, defense counsel never even notified the state that it intended to use Gilbert as an expert without a report.  Contrary to Biro's assertion, we do not read the trial court's order as requiring an expert report only if he intended to introduce one at trial.  Indeed, former Crim.R. 16 requires the production of a report under such circumstances.  In light of the trial court's explicit order regarding an expert report, it is clear to us why the court refused to allow Gilbert to testify as an expert: Biro had not prepared a report or provided one to the state.

{¶ 40} Thus, under the circumstances of this case, we cannot say that the trial court abused its discretion in refusing the defense's request to qualify Gilbert as an expert and elicit his expert opinions on cross-examination.

{¶ 41} We further note that the record does not convince us that Gilbert would have even been qualified to render the opinion proffered by defense counsel.  Even assuming that Gilbert is an expert in accident reconstruction, there is no evidence that he was qualified to opine specifically that the victim's bike was already on the ground when Biro struck it.  Indeed, Gilbert did not

---

3.  We note that since Biro's trial in this case, the Ohio Supreme Court has adopted open discovery in criminal cases, significantly amending former Crim.R. 16.  The new rule became effective July 1, 2010.  We, however, apply former Crim.R. 16, which was in effect at the time of Biro's underlying case.

4.  See *State v. O'Malley* (Mar. 25, 1993), 8th Dist. No. 62223, 1993 WL 87694.

conduct any type of investigation in this case, and his opinion was based solely on his cursory review of the damage to Biro's vehicle.[5]

{¶ 42} But even assuming that Gilbert was qualified to testify as an expert and that the defense was entitled to offer his testimony, we find that the exclusion of his testimony was harmless error beyond a reasonable doubt. "An error in the admission or exclusion of evidence is properly considered harmless error if it does not affect a substantial right of the accused." *State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio-2335, 789 N.E.2d 696, ¶ 80, citing Crim.R. 52(A).

{¶ 43} The state produced two eyewitnesses who observed the victim riding his bicycle up until the collision. Indeed, one eyewitness testified in detail as to the collision, including stating that the victim "smacked" the side of Biro's car, bounced off the car, and ultimately was run over by the back of Biro's car. Gilbert did not observe the accident, and any opinion that he would have offered was based solely on his brief examination of the vehicle when he pulled it over. He even admitted that he did not observe the undercarriage of the vehicle, noting that "it would be something you would do on a post crash examination of a motor vehicle." Thus, even if the defense would have been able to establish that Gilbert was qualified to render an opinion, we fail to see what weight, if any, the opinion would have carried given the overwhelming evidence contradicting that opinion.

{¶ 44} The first assignment of error is overruled.

Judgment affirmed.

KILBANE, P.J., and BLACKMON, J., concur.

---

5. Notably, the trial court did permit Gilbert to testify that based on the accident as described over the radio, he anticipated that Biro's headlight would have been broken but it was not.